316-0260, Hickory Point Bank & Trust, F.S.B., Appellant by Kevin Papp, v. Donald Simpson, and Intervenor Adelaide by Robert Pills. Thank you, Your Honor. May it please the Court, Counsel? My name is Kevin Toth. I represent the appellant in this matter, Hickory Point Bank & Trust. What this case and essentially this appeal surrounds is a judgment obtained by my client against the defendants in this matter. And in particular, pursuant to that judgment against one of the defendants, Ms. Lonnie Lang, during supplementary proceedings and pursuant to a citation to discover assets, the bank discovers that Ms. Lang has an interest in a particular trust. That trust is called the Lang Irrevocable Trust. Ms. Lang is the settler of that trust. She's a trustee of the trust, and she's also an 85% beneficiary. Ms. Lang's father, Mr. Simpson, the intervenor in this case, has a discretionary income interest in this trust. He has no right or power to demand any distribution pursuant to the trust of income or principal for that matter. By way of background of that trust, in I believe February 22, 2008, Mr. Simpson and his late wife transferred four parcels of property to Ms. Lang via a trustee's deed. Those parcels of property are transferred out of Mr. Simpson's then existing family trust, and he was one of the trustees. Those parcels of property are transferred to Ms. Lang individually, with no alienation on her rights whatsoever. By operation of law, those parcels of property became hers at that point in time. Ms. Lang then holds on to those parcels of property until approximately May 6, 2008, when she then quick claims those parcels into a deed for trust, and it becomes part of the corpus of the Lang Irrevocable Trust. Now, Mr. Simpson argues here that Ms. Lang simply has no interest in that trust whatsoever. It's contingent. It's our position that her interest is presently vested, and it was so upon declaration of the trust. The law is clear that a beneficiary who's in being and ascertained, Ms. Lang was in being, she was named at that point in time, and as unfortunate as it may be, Mr. Simpson will eventually pass away. Her interest in that trust vests immediately. Mr. Simpson argues that Ms. Lang is merely a beneficiary upon his death. Well, that language in the trust only refers to the time when she obtains, quote, unquote, physical possession or enjoyment of the property. Notwithstanding that, however, she actually has physical possession and enjoyment of some of this property that's held in trust. She lives in a home situated on one of the parcels of property that constitutes the corpus of the trust. Because of the way the trust is set up, the bank seeks to either liquidate a sufficient amount of Ms. Lang's interest to satisfy the outstanding judgment, or in the alternative, to assert a judicial lien against her interest. We believe that that's a narrow issue for the court's consideration, whether this trust was self-settled or not, and if it was self-settled, can the bank execute against it or attach a judicial lien against it? The statute at issue is Section 214.03 of the Code of Civil Procedure. That's a statutory exclusion from post-judgment execution on property held in trust for a judgment debtor when that trust is created by someone other than the judgment debtor, or the funds that are part of that trust came from someone other than the judgment debtor. It's our position that Ms. Lang does not have that statutory protection for two reasons. One, she's a settler of the trust. She created it. Two, that property that was settled into the trust came from her. It was hers by operation of law at the time she settled the trust. That statute, we believe, was clearly interpreted in the 2012 Supreme Court case of Rush University Medical Center versus Sessions that's cited in our briefs here. The key principle set forth by that case is to prevent judgment debtors from using a trust to avoid liability to present and future creditors. That case says that Illinois has had a statute similar to Section 214.03 for a long time that withholds protection from execution on assets held in trust for a judgment debtor who created or funded the trust. The clear corollary is that Illinois law allows execution by a creditor against assets that are held in a self-settled trust. Otherwise, Ms. Lang here can use this trust for benefit to have property beyond the reach of her creditors and preserve her ability to benefit from those assets that are held in trust without any regard to her business renters or debts or liabilities. So because the trust was settled by Ms. Lang and with her property, we believe that the bank should be able to execute against her interest in the trust. In the alternative, the bank has contended that it should be permitted to assert a judicial loan against Ms. Lang's interest. The case is cited by both of the parties here, particularly the Klein case. Now Mr. Simpson argues that those actually cut against the bank's position here simply because they state in summary that a creditor has no right to access funds held in trust for a judgment debtor. And that's correct when the trust is not self-settled. Here though, this is a self-settled trust. So we believe that we should, in the alternative, be able to assert a judicial lien against Ms. Lang's interest. When would that lien become operative? Well, we believe that the lien would be operative at this point, but we wouldn't be able to do anything essentially until Mr. Simpson passes and then the property gets transferred into her name, in which case we would... If she doesn't survive, it's our position that her interest goes to her estate. Does it? We believe so. If Simpson survived... I'm sorry? The income beneficiary is Simpson, her father. That's correct. And she predeceases Simpson. She has an interest that you can execute a lien on? Well, yes. In her estate? That's correct. Do you think that's going to be listed in the probate estate? Well, Judge, I'd have to pull up the specific case. I think it's the Michalak case that we cited in here, or perhaps it's one of the other cases during my rebuttal. While Mr. Hills argues, I can pull up that case, but I believe there's a reference in there that just because the debtor deceases, it doesn't eliminate the ability to go after that interest. Because our position is that this is a self-settled trust, we believe that we shouldn't have to wait until there's any distribution of trust assets to Ms. Lang in order to at least assert a judicial lien here. Now, you would take a different position if Mr. Simpson had created the irrevocable trust retaining the life estate in the property that was transferred to him? That would be a different position. And if that were the situation, Your Honor, and Ms. Lang was, again, the beneficiary in that situation, she'd be afforded the protection by Section 214.03. But because she created the trust and because it was her property that she put in the trust at that point in time, she's not afforded that protection. So it's our position that the bank should either be permitted to liquidate a sufficient amount of Ms. Lang's interest in the trust to satisfy the judgment, or in the alternative, to assert a judicial lien against her interest. And we believe it was an error for the trial court to determine that this was not a self-settled trust and to then determine that the bank was not allowed to either liquidate a sufficient amount or assert a judicial lien. Therefore, we requested the trial court be reversed. I think a crucial line would be whether they accepted or not, or however they accepted it. It was preceded from, the claims were preceded from. Now, how would you explain that in a way that... Let me ask you another question. There's no dispute that the funds that funded the trust were the same funds that originated with the Simpsons, right? That's correct, Your Honor. Those funds transferred from Mr. Simpson's then-trust to Ms. Lang, became hers. Then she transferred them into the trust. We see that as parsing it two ways. It was his, Mr. Simpson's, to Ms. Lang, and then from Ms. Lang to the trust. Those are two separate events. What about those two? We believe that the property preceded from her. It was hers by operation of law at that time. In essence, the purpose of this trust, it's a Medicare-Medicaid planning trust. The purpose of that is so Mr. Simpson appears as if he doesn't have a certain amount of assets so that those assets aren't utilized and aren't diminished, and then they pass on to his beneficiaries. So that's why they were given to her outright. With that, I'll reserve any further comments. Because otherwise, if he'd been the settler, they could be brought back through a Medicaid lien? Correct, through the look-back period or otherwise. Thank you. Mr. Hillis. Good afternoon, Justices, Counsel. May it please the Court. My name is Robert Hillis, and I'm here on behalf of Don Simpson. And I first want to say what we have here is an estate plan that's unfolding. Mr. Simpson, we don't dispute the facts here. Mr. Simpson has given property through his daughter, which was created into a trust for his lifetime benefit. He's currently living in one of the homes that used to be in his own trust, and he has a life estate for the income. And now what we have is his daughter, who has gone out and gotten herself into some financial trouble, and there's a judgment against her by the bank, and they want to execute against her interests. So one of the issues is, can they do that? Is the money hers to get at right now? And our position is, no, it's not. Her interest is a contingent remainder interest. It comes at the very end. So what happens, or what has to happen, in order for Ms. Lange to get a hold of this money in a way that the bank can take it, is that she has to survive by client, Don Simpson. If she doesn't, to answer your question, Justice Holdridge, her interest would then be absorbed by the other beneficiaries, her three sons. They would be 100% beneficiaries at that point in time, and Ms. Lange is out. She will never receive any money. Her estate will never receive any money. If the court were to allow the bank to execute on this contingent remainder interest, what we would be doing is taking away, or potentially taking away, Mr. Simpson's life estate in his income, and potentially taking away his home if it would be sold. But he gave away that when he put the property in her name in March, March 24, 2008, when he claimed the property to her, there were no restrictions on it. He gave it to her then. So from the 24th of March, 2008, until May 7, 2008, whose property was it? That's correct. It's her property, and she sat on it for 10 weeks, and she didn't go out and create this medical trust for him for those 10 weeks. We don't have any dispute that those are the facts and the record. Our position is that this was not her property individually in the big scheme of things. This was an estate plan. It may be an estate plan, but it was her asset for how long? For roughly 10 weeks it was in her individual name. It was her asset, and she created this life beneficiary trust estate for her father. Correct? Yes. And the trial court's finding and the record would reflect that that was so that him and his wife could enjoy their final years. For whatever reason. It doesn't matter, does it, what the reason is. If you look at the documents she created with her own assets, a irrevocable or revocable? I believe it's irrevocable. Irrevocable trust, and she made, in effect, the trust is giving a life income, okay, out of trust proceeds, however they're, whether they're liquidated or not, to her father. Correct? Correct. And she's retaining a right as a beneficiary upon her father's death. Correct. There's no other family involved in this trust except her and her children, right? Eventually. Yes, yes, her three children are 15% beneficiaries. So why isn't this a self-settled trust? She's not the primary beneficiary. She is the settler, but she settled this trust in favor of Don Simpson for his life estate, and she doesn't get anything guaranteed. But neither does he. It's only, I mean, isn't he only entitled to income that she chooses in her discretion? Right, she does have the discretionary interest, or I'm sorry, the discretion to determine whether he needs income or not, and if she does, he can pay it to him. If she doesn't, she would then have a fiduciary duty to at least preserve it for him during his life. So if we look at Section 214.03 of the Civil Code of Procedure, which is the statute that the bank here is trying to use as a sword, it's actually a shield. This was created in good faith by Lonnie Lang for her father, and the funds proceeded from someone else. They didn't proceed from her. They proceeded from her father in the course of this estate plan. And the bank relies on the Sessions case, indicating that the clear corollary to the statute would be that the creditor can execute against assets of the self-settled trust. Well, the facts in that case are vastly different. In that case, there is a self-settled trust, where a gentleman essentially was intending on giving $1.5 million to Rush Medical Hospital, ultimately got mad at them and decided to try to take it back, and recanted on his pledge and tried to move the money to a different trust. And in that case, that's void as to public policy, because it was a spendthrift trust where he was trying to hide his own assets. We don't have that here. She's not trying to hide her own assets from any creditor. In fact, the bank didn't exist as a creditor as to her at the time this was formed. So there would have been no anticipation of that. And with regards to the lien, the Klein and the Knight case, essentially Klein, our position is the Klein case doesn't really do much for this instance, because in Klein, the money had already left the trust. And of course, when the money leaves the trust, the bank is entitled to execute their judgment against it. So in this case, if Don Simpson passes away and Lonnie Lang does inherit this money, without a doubt, the bank can go after that, because it will be leaving the trust and going to the beneficiaries. The money hasn't left the trust here, and she can't remove the money from the trust for herself, only for Don Simpson during his life. The bank has a judgment against her, right? Yes. So as long as it keeps that judgment alive, it's still valid judgment, plus whatever interest it accumulated. Correct. So when he does die, the bank can execute it. Yes. Yes, we don't have any dispute as to that. But during his life, our position is anything the court does to award the bank its judgment against whatever interest we determine she has, our position is contingent remainder, so she doesn't really have that until he passes away. But anything the court does to interfere with that necessarily harms my client's life estate. Because if we have to liquidate the trust, again, we could have to sell real estate, the income could be depreciated. Also, if a lien is placed, well, liens are typically recorded against real estate. She can't sell off a house to help with his expenses in that case without paying the judgment of closing. Anything we do interferes with his life estate. And that's not the purpose of this trust, and the law wouldn't offer any protection for that. What is your position? Should she pre-decease Mr. Simpson? Then her interest would, by the terms of the trust, go to her three sons, and they would go from 15% to 100% beneficiaries. Can the bank at that point execute on a judgment? To the extent they have a judgment against those existing beneficiaries. As to Ms. Lange, I don't believe so, because her interest would have terminated. Now, the judgment that the bank has is against more than just Ms. Lange, and it wasn't litigated here, but if it is against one of her sons, then they would, of course, be able to go after that individual's hands. The sons or daughters? To my knowledge, the sons or daughters, yes. Again, in summary, our position is that this statute protects Ms. Lange's interest, essentially. It's created in good faith. The funds proceeded from Don Simpson. And if we look outside the statute to the case law, we have cases that are indicating that you can't execute on a contingent remainder. It's just simply not hers to take at this point in time. And the bank is free to execute their judgment against her if my client pre-deceases her, she survives, and she ends up taking that money into her own hands. That's essentially our position. Okay. Thank you. Mr. Toth?  Mr. Hunt. I just might briefly touch on the point, the question that Justice Holdridge had. It's our position, and this is in reference to the Sessions case. It's our position because this is a self-settled trust, in which case she's not afforded the protection by Section 214.03. There's a quote in the Sessions case. It states, There's no sound reason to treat the creditor's rights as suddenly defeated the moment the settler dies. In which case, we would be able to go after her interest if she passes, or if she pre-deceases Mr. Simpson. As unfortunate as it may be, this was part of an estate plan. Mr. Simpson's estate plan. But neither Mr. Hills, nor I, nor anyone else involved in this litigation, had anything to do with this. And the way that the plan was set up, as Mr. Simpson's counsel admits, that property was given to Ms. Lange. It was hers outright for that period of time, which she then put into the trust. It's our position that she's a contingent beneficiary here. We believe the case law is clear. It is cited in our briefs that her interest is presently vested. It's just a matter of when she gets, quote, unquote, physical possession or enjoyment. And in fact, she has that physical possession and enjoyment of the home she resides in. It's one of the parcels. It constitutes corpus of the trust. But yet, she hides behind the veil of this trust by saying, Well, it's not mine. I don't have any benefits with it whatsoever. And in the instance that some of the assets do need to be sold off for Mr. Simpson's discretionary interest here, I would find it hard to believe that Ms. Lange would remove herself from her own home to then liquidate assets to give discretionary income to her father here. And with that, I have nothing further. Thank you. Thank you, Mr. Toth. Thank you both for your argument today. Unfortunately, this matter of her advisement to mention as a written decision is in a shortcut. And I think we'll adjourn now. Thank you.